YANTISS *v.* OSBORN, RECEIVER.

[No. 15,100. Filed October 15, 1935. Rehearing denied January 8, 1936. Transfer denied May 20, 1936.]

250

*Gochenour & Graham,* for appellant.

*John W. Kitch, George F. Stevens* and *Don F. Fitch,* for appellee.

KIME, J.—The appellant, who was a stockholder of the Tippecanoe State Bank, was granted permission by the Marshall Circuit Court to file a petition for himself, and on behalf of all others similarly situated, in the receivership of the Argos State Bank pending in that court. The petition was filed in two paragraphs and alleged that during the summer of 1924 the Citizens State Bank of Argos placed various loans (which form the basis of this suit) from funds belonging to the Tippecanoe State Bank; that at the time these original notes were made they bore the endorsement of the Citizens State Bank; that shortly thereafter a letter was sent to the Tippecanoe State Bank by the Citizens State Bank, saying among other things that "we will be responsible for any paper that we may place or loan through your bank and if any paper should come due that is not taken care of at once or if the bank does not care to carry same to notify us at once, and that we will see that the same will be paid."

The petition further alleged that these notes were renewed from time to time in the banking rooms of the Citizens State Bank and that the Tippecanoe State Bank acted and relied upon the letter above set out from the time of the original notes in 1924 until consolidation of the Citizens State Bank and the First Trust and Savings Bank of Argos in 1928. Shortly before the consolidation

of these banks the Board of Directors of the Citizens State Bank adopted a resolution which they caused to be brought to the attention of the Tippecanoe State Bank, which resolution, in part, is as follows:

> "Resolved, that the Citizens State Bank, Argos, Ind., will take up the following notes in the Tippecanoe State Bank at maturity if demanded by said bank."

and then followed the names of the makers of the four notes herein involved, which resolution was signed by three directors and witnessed by the cashier.

The petition then alleged that on the 10th day of July, 1928, the banks consolidated and a copy of the agreement of consolidation was made a part of both paragraphs of petition by exhibits. A part of said agreement reads as follows: "The state bank shall furnish to the Argos State Bank a note equal to the amount of its liabilities said liabilities consisting of Demand Certificates of Deposit in the amount of $—— Demand Savings Deposits in the amount of $—— and individual Customers' Checking Accounts in the amount of $——, and Bills Payable in the amount of $——, said note to be collateralized by all the assets of the state bank except $25,000.00 worth of assets to be transferred for the payment of subscription to the capital stock and surplus of the Argos State Bank.

"The above assumed liabilities shall consist of the liabilities named and shall not consist of any liability to the present stockholders of either the trust company or of the state bank insofar as dividend or distribution to them on account of ownership of stock in either the state bank or in the trust company. It is further understood and agreed that the stock of the Argos State Bank shall be non-transferable on the books and records of the said Argos State Bank for the period of two years" and that the consolidation shall become effective when

ratified by the affirmative vote of a certain per cent of the stockholders of each institution and that they should be merged and consolidated under a charter issued by the State of Indiana to the Argos State Bank.

The petition further alleged that this consolidation was perfected on the 10th day of July, 1928. That the newly chartered Argos State Bank entered into an agreement with the Tippecanoe State Bank whereby the Argos State Bank, for the consideration of $250.00 and such resultant good will as would follow, to liquidate the Tippecanoe State Bank, a copy of which contract was made a part of both paragraphs of petition, by exhibits. Pertinent parts of the contract for liquidation provide that the party of the second part, which was the Argos State Bank, agreed to assume all of the liabilities of the party of the first part, which was the Tippecanoe State Bank, but the Argos State Bank did not assume any liability to the stockholders of the Tippecanoe State Bank "other than such as might be liquidated from the assets over and above assumed liabilities," and the Tippecanoe State Bank was to save the Argos State Bank from any loss by furnishing a note equal to all of its liabilities, which note was secured by all of the assets of the Tippecanoe State Bank and said bank was to assign to the Argos State Bank "all mortgages, liens or judgments or any security it might now hold." It was alleged that this was done.

The liquidation agreement further provided that this was purely a liquidation and did not release the stockholders of the Tippecanoe State Bank from any assessment liabilities that might be levied by reason of their stockholdings and that the liquidation agreement should become effective when it was ratified by a certain percentage of the stockholders of the Tippecanoe State Bank.

It was further alleged that the liquidation of the Tip-

pecanoe State Bank was completed and that all of the liabilities of the Argos State Bank to the Tippecanoe State Bank were paid and that the funds resulting from the four notes in question came into the hands of the receiver by virtue of the fact that it became the duty of the Argos State Bank under the consolidation agreement to collect this money as one of its assumed obligations. In other words that it was the duty of the Argos State Bank to pay the guaranties of the Citizens State Bank to itself as liquidating agent for the benefit of the stockholders of the Tippecanoe State Bank and that this was or in equity should have been done by the receiver and his predecessor in title, Argos State Bank.

The petition further alleged that at the time of the insolvency and closing of the Argos State Bank there came into the hands of the receiver monies sufficient with which to pay all of the indebtedness of the Tippecanoe State Bank, of every kind and character, and that all this was paid and that there remained, and that the bank still holds, the $10,000.00 here involved which had come into its hands by virtue of the dual position occupied by it and that there came into the hands of the receiver, from the assets of the said Argos State Bank, an amount in excess of $10,000.00. And further that from the 13th day of September, 1928, when the last note in question matured the Argos State Bank held in trust, of and in its own separate funds, as trustee for Tippecanoe State Bank, its creditors and stockholders, the total amount of principal and interest due, upon said four notes, in excess of $10,000.00, and that more than $10,000.00 passed into the possession of the receiver.

For the purpose of this opinion the difference in the first and second paragraphs of petition, which is very slight, need not be specifically set out as the decision which must be reached is applicable to both.

To each paragraph of petition the appellee addressed demurrers which demurrers for all practical purposes were identical, the charge being that each paragraph of the petition did not state facts sufficient to constitute a cause of action.

The court sustained demurrers to both paragraphs of petition, which was excepted to and this appeal was perfected. The error assigned is that the court erred in sustaining the demurrers to each paragraph of the petition.

The appellant contends that where two corporations consolidate the new corporation becomes liable for the obligations of the consolidating corporations, at least to the extent of the property of the old corporations received by the new. This has been held to be the law in this state by a long line of decisions, the most outstanding one being *U. S. Capsule Co.* v. *Isaacs* (1899), 23 Ind. App. 533, 544, 55 N. E. 832, wherein the court adopted and lays down the following rule: "Where a new corporation is formed out of old ones, and the assets of the old ones are turned over to it as a part of its assets, the new or consolidated corporation will be liable for the debts of its constituent corporations to the extent of the property or assets thus acquired, and a creditor may sue the consolidated corporation, reduce his debt to a judgment, and may have execution issue thereon for its collection."

It was the duty of the Argos State Bank, when it took over the assets of the Tippecanoe State Bank, under the contract of liquidation, to perform whatever duties were incumbent upon the directors and officers of the Citizens State Bank prior to the agreement for the protection of the creditors and stockholders of the Tippecanoe State Bank. The Argos State Bank was here acting as the liquidating agent for the Tippecanoe State Bank and as the successor of the Citi-

zens State Bank it held these notes at the time of their maturity. By thus acting in this dual capacity notice or demand was not necessary, as they had full notice because of their dual position and a notice or demand would have been of no avail.

The Argos State Bank was acting as a fiduciary agent of the Tippecanoe State Bank and the equitable duty extant was that of trustee to *cestui que trust*. The Argos State Bank was liquidating the Tippecanoe State Bank for the benefit of those equitably entitled to receive the proceeds of the liquidation and the title was immediately vested in the beneficiaries, and the Argos State Bank was only the trustee to execute such trust. Since equity regards the substance and not the form this was in equity a trust. Even accepting appellee's version that this was only an arrangement of principal and agent there was by such agreement a fiduciary relation created which cast upon the Argos State Bank the duty of acting with the utmost good faith and utmost good faith demands that the liquidation be made for those equitably entitled thereto. *Smith* v. *Fiscus* (1916), 62 Ind. App. 156, 111 N. E. 203.

The case of *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369, established the law, in relation to banks, which necessarily must be proven to establish a trust. These are as stated in the conclusion of that case: (1) that the funds must be received as trust funds; (2) that at the time of the insolvency the cash assets must be sufficient to pay the claim of claimants and all other claims of that class; (3) that after the funds came into the hands of the trustee up to the time of insolvency it had sufficient funds with which to pay such claims; and (4) that said funds passed into the possession of the receiver and augmented the cash assets to that extent.

As shown by the statement of facts the allegations were that (1) there came into the possession of the Argos State Bank by virtue of its being the liquidating agent for the Tippecanoe State Bank, and successor in interest of the Citizens State Bank, the monies which were due the Tippecanoe State Bank by virtue of the guaranty contract of the Citizens State Bank which it became the duty of the Argos State Bank to set aside for the benefit of the creditors and stockholders of the Tippecanoe State Bank; (2) that at the time of the insolvency of the Argos State Bank the cash assets amounted to more than $10,000.00; (3) that all of the indebtedness of every kind and character of the Tippecanoe State Bank had been paid, which is equivalent to the allegation that this amount was sufficient to pay this claim and other claims of its class, the allegation being that all of the other claims had been paid; and (4) that during the entire time from the time it became the duty of the Argos State Bank to set these funds aside in trust, down to the time that the receiver was appointed, this amount was in the possession of the Argos State Bank and that said funds passed into the possession of the receiver. This is sufficient to entitle the petition to be heard upon the merits.

The judgment of the Marshall Circuit Court is hereby reversed with directions to such court to overrule the demurrers of the appellee to each paragraph of the petition.